IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHARMACY PROVIDERS OF OKLAHOMA, INC. d/b/a RxSELECT,<br><br>Plaintiff,<br><br>vs.<br><br>Q PHARMACY, INC., MURO GROUP, INC., ALVARO MONTEALEGRE, CARLOS R. TAMI, STEPHEN PALACIOS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case Number CIV-12-1405-C

## MEMORANDUM OPINION AND ORDER

Plaintiff Pharmacy Providers of Oklahoma, Inc., d/b/a RxSelect ("PPOk"), filed the present action against Defendants Q Pharmacy, Inc. ("Q Pharmacy"), Muro Group, Inc. ("Muro"), Alvaro Montealegre ("Montealegre"),[1] Carlos R. Tami ("Tami") and Stephen Palacios ("Palacios") alleging fraud and breach of contract. Now before the Court are the Motions to Dismiss of Defendants Muro, Palacios, Q Pharmacy, and Tami (Dkt. Nos. 31, 33, 34, 36). For the reasons more fully set forth herein, the Court now DENIES Defendants' motions.

## I. BACKGROUND

PPOk administers various pharmacy benefit programs offered by Pharmacy Benefit Managers ("PBMs") by contracting with numerous pharmacies ("Network Pharmacies") and

---

[1] Plaintiff has not yet obtained service on Defendant Montealegre because he allegedly moved back to Nicaragua after PPOk discovered the deficit caused by the Defendants' reversals.

facilitating payments.  A benefit program participant calls in a prescription at a Network Pharmacy.  The Network Pharmacy then submits the prescription to the PBM for an eligibility determination.  If the PBM approves the claim, the Network Pharmacy will fill the prescription for the program participant.  Each pay period, the PBM will deposit a lump sum equal to the value of all approved claims into PPOk's General Account.  PPOk then divides the funds and distributes them into the appropriate Network Pharmacies' accounts.  If a Network Pharmacy submits a claim for a prescription that a patient calls in but never picks up, the Network Pharmacy notifies the PBM to "reverse" the Claim.  The PBM deducts the value of the reversed claim from its next lump sum payment to PPOk, after which PPOk will deduct that amount from its next distribution to that Network Pharmacy account.

The six pharmacies that Defendant Q Pharmacy operated joined PPOk's network of pharmacies in the spring of 2012.  Defendants Tami and Palacios began inquiring as to PPOk's electronic fund transfer schedule and the timing of payments from the various participating PBMs.  Meanwhile, the pharmacies operated by Q Pharmacy submitted reversals at an accelerating rate.  In late September or early October, five of the six pharmacies operated by Q Pharmacy closed but reversal submissions continued to climb.  During this same period, PPOk credited Q Pharmacy's account for approximately $450,000 of prescriptions that Q Pharmacy subsequently sent reversal of claim notices for to the appropriate PBMs.  After the PBMs reduced their payments to PPOk's General Account, PPOk sought to debit Q Pharmacy's account.  However, the account no longer had any funds remaining.  The last open Q Pharmacy location subsequently shut down.

After several unsuccessful discussions with Defendants Tami and Palacios, PPOk filed the present suit, alleging fraud and breach of contract.  All four Defendants now ask the Court to dismiss PPOk's suit for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.

## II. PERSONAL JURISDICTION

### A. Legal Standard

Fed. R. Civ. P. 12(b)(2) allows a defendant to move for dismissal on the basis of a lack of personal jurisdiction.  If a defendant challenges the Court's jurisdiction, "'the plaintiff has the burden of proving jurisdiction exists.'"  Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (citing Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995)).  In analyzing personal jurisdiction, the Court "'take[s] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint'" and "resolve[s] any factual disputes in the plaintiff's favor."  Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008)).

Personal jurisdiction over a nonresident defendant must be proper under the laws of both the forum state and the due process clause of the United States Constitution.  Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159 (10th Cir. 2010).  Because Oklahoma's long-arm statute, 12 Okla. Stat. § 2004(F), "supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry."  Shrader, 633 F.3d at 1239.  The constitutional due process analysis requires the defendant to have

sufficient ""minimum contacts" with the forum state'" and for the exercise of personal jurisdiction over the defendant not to """offend traditional notions of fair play and substantial justice.""" Id. (quoting Dudnikov, 514 F.3d at 1070) (internal citation omitted).  There are two ways to satisfy the "minimum contacts" test.  If a defendant has continuous or systematic contacts with the forum state, the court may exercise general personal jurisdiction over the defendant.  Even if the court cannot exercise jurisdiction over a nonresident defendant generally, the court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotations omitted).

B.  Application

Neither party alleges that the Court has general jurisdiction over the Defendants. Rather, the dispute centers on whether the Court can exercise specific jurisdiction over the Defendants on the basis of their business relationship with Plaintiff, an Oklahoma resident, and Defendants' submission of allegedly fraudulent claims.  Because contract and tort actions utilize a different legal analysis, the Court addresses Plaintiff's two jurisdictional theories separately.  See AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058-1061 (10th Cir. 2008); Continental Res., Inc. v. Guderjahn Trucking, Inc., Case No. CIV-12-704-D, 2013 WL 593398, at *4 (W.D. Okla. Feb. 13, 2013).

1.  Minimum Contacts

a.  Contract-Based Actions

The Supreme Court's seminal decision in <u>Burger King</u> governs the due process analysis in cases arising from contractual relationships. In <u>Burger King</u>, the Court eschewed "'mechanical' tests" and instead adopted a "'highly realistic' approach" focusing on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." <u>Id.</u> at 478-79.  Thus, merely entering into a contract with a resident of the forum state will be insufficient to subject a non-resident defendant to personal jurisdiction. <u>Id.</u> at 478; <u>AST Sports Sci.</u>, 513 F.3d at 1059.  Instead, the Court will look for additional evidence of purposeful contacts between the Defendants and the forum, such as an ongoing business relationship.  <u>See AST Sports Sci.</u>, 513 F.3d at 1059.

Despite Defendant's contention that "[t]he only contact Q Pharmacy has with Oklahoma is the fact that it contracted with an Oklahoma corporation," (Def. Q Pharmacy's Mot. to Dismiss, Dkt. No. 34, at 15), the Court finds evidence to the contrary.  For example, as in <u>AST Sports Science</u>, Plaintiff alleges that Defendant Tami, on behalf of Defendant Q Pharmacy, initiated the business relationship between the parties by seeking to join PPOk's network of pharmacies.  <u>See AST Sports Sci.</u>, 513 F.3d at 1059.  Additionally, Plaintiff points to evidence of the Defendants' continuous pursuit of a business relationship, consisting of the submission of numerous documents and multiple telephone calls and emails from Defendant Tami to PPOk during the parties' seven-month involvement.  The Tenth Circuit has repeatedly held that "[p]hone calls, letters, facsimiles, and emails 'provide

additional evidence that [the foreign defendant] pursued a continuing business relationship with [the plaintiff].'" Id. (quoting Pro Axess v. Orlux Distribution, Inc., 428 F.3d 1270, 1278 (10th Cir. 2005)); see also Benton, 375 F.3d at 1077.  Because these types of modern communications often "obviat[e] the need for physical presence within a State in which business is conducted," the "absence of physical contacts" will not defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." Burger King, 471 U.S. at 476.  Accordingly, Plaintiff has alleged sufficient minimum contacts between Defendants Q Pharmacy and Tami and the forum.[2]

Similarly, Plaintiff has also made a sufficient showing with respect to Defendant Palacios.  Like Defendant Tami, Palacios is an officer of Defendant Q Pharmacy.  As with Defendant Tami, Palacios sent numerous emails to Plaintiff PPOk concerning PPOk's reimbursement schedule.  Additionally, Palacios participated in all three teleconferences with PPOk that took place after PPOk encountered a problem debiting Q Pharmacy's account to

---

[2] Defendant Tami argues that even if Oklahoma has personal jurisdiction over Q Pharmacy, the Court should not attribute personal jurisdiction to Tami because "[j]urisidction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself."  (Def. Tami's Mot. to Dismiss, Dkt. No. 36, at 18.)  For support for this proposition, Tami relies on Ten Mile Industrial Park v. Western Plains Service Corp., 810 F.2d 1518, 1527 (10th Cir. 1987).  However, Tami ignores more recent Tenth Circuit authority directly on point.  In two recent cases, the Tenth Circuit clarified the meaning of Ten Mile and explained that although the corporate shield doctrine protects an officer from being held liable solely because of his or her status as an officer, it does not protect an officer who participated in the wrongful activity.  See ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 763-65 (10th Cir. 2011); Rusakiewicz v. Lowe, 556 F.3d 1095, 1100-03 (10th Cir. 2009).  Because Plaintiff alleges that Defendant Tami participated in the wrongful activity, or the fraud and breach of contract, the Court has personal jurisdiction over Defendant Tami, not just Defendant Q Pharmacy.

recoup the payments it had made for claims subsequently reversed by Defendants.  Plaintiff

has presented facts demonstrating Palacios's involvement in the alleged reversal fraud, the

basis of both Plaintiff's tort and contract claims, such as Palacios's emails about the PPOk

reimbursement schedule and Palacios's knowledge of future reversal claims.[3]

Due process also permits the Court to exercise personal jurisdiction over Defendant

Muro, the parent company of Defendant Q Pharmacy.  Although a "parent company has a

separate corporate existence" and is generally "treated separately from the subsidiary,"

Quarles v. Fuqua Industries, Inc., 504 F.2d 1358, 1362 (10th Cir. 1974), "federal courts have

consistently acknowledged that it is compatible with due process for a court to exercise

personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal

jurisdiction in that court when the . . . corporation is an alter ego or successor of a

corporation that would be subject to personal jurisdiction in that court."   Patin v.

Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002).  The parties agree that

Texas law governs whether Q Pharmacy was the alter ego of Defendant Muro.

To impose alter ego liability under Texas law, Plaintiff must demonstrate:  "(1) that

the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and

(2) that the corporate fiction was used for an illegitimate purpose."  Tryco Enters., Inc. v.

Robinson, 390 S.W.3d 497, 508 (Tex. App. 2012) (citing SSP Partners v. Gladstone Invs.

---

[3] Palacios makes the same argument as Defendant Tami regarding his status as a corporate officer and the corporate shield doctrine.  However, the Court rejected this argument by Tami, relying on ClearOne Communications and Rusakiewicz.  Because Plaintiff alleges that Defendant Palacios participated in the wrongful activity—the fraud and breach of contract—the Court has personal jurisdiction over Defendant Palacios, not just Defendant Q Pharmacy.

(USA) Corp., 275 S.W.3d 444, 456 & n.7 (Tex. 2008)).  In analyzing whether two corporate

entities are alter egos, the Court must examine "the total dealings of the corporation[s],"

Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986), including such factors as

commonality of stock ownership, commonality of directors and officers, the sufficiency of

the subsidiary's capitalization, and the failure to keep the daily operations of the two

corporations separate.  United States v. Jon-T Chems., Inc., 768 F.2d 686, 691-92 (5th Cir.

1985).

        Viewing the facts in the light most favorable to Plaintiff, these factors support a

finding of alter ego liability.  To begin with, Muro owns 90% of Q Pharmacy, the two

businesses share the same address, and the same three individuals serve as officers and

directors for both companies.  Additionally, the Defendant companies did not keep their daily

operations separate, evidenced by emails dealing with Q Pharmacy's business sent from

Muro email accounts.  Moreover, Plaintiff has alleged facts showing the undercapitalization

of Q Pharmacy:  Q Pharmacy requested advance payment for third-party receivables, Q

Pharmacy closed all of its pharmacy locations, Q Pharmacy was not able to repay PPOk for

the amount corresponding to the reversals Q Pharmacy submitted, and Q Pharmacy was

unable to pay its Texas taxes.  Because the facts, if proven, indicate both that Q Pharmacy

was the alter ego of Defendant Muro and that the Defendants used the corporate fiction for

an illegitimate purpose—to perpetrate a fraud and then gut Q Pharmacy, leaving PPOk

without recourse—the Court has personal jurisdiction over Defendant Muro, on the basis of

Defendant Q Pharmacy's contacts with the forum state.

Therefore, the Court finds Plaintiff has made a sufficient showing to establish personal jurisdiction over all Defendants for Plaintiff's contract action in this forum.

b.  Tort-Based Actions

The "purposeful direction" doctrine applies equally to Plaintiff's tort-based claim for fraud, although the determination of whether the Defendants purposefully directed fraudulent conduct at the forum state involves a different analysis.  In Dudnikov, the Tenth Circuit distilled the purposeful direction test set out by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), into three factors:  (1) "an intentional action" by the Defendants; (2) "that was . . . expressly aimed at the forum state"; (3) with the "knowledge that the brunt of the injury would be felt in the forum state."  Dudnikov, 514 F.3d at 1072.  The Court concludes that Plaintiff has met all three of the Dudnikov/Calder factors.

First, Plaintiff has alleged an intentional action by the Defendants:  Plaintiff contends that Defendants fraudulently submitted false claims for prescriptions with the intention of reversing the claims after payment.[4]  Moreover, as in Continental Resources, "Oklahoma is the 'focal point' of both the alleged fraudulent scheme . . . and the harm suffered."  Continental Res., 2013 WL 593398 at *5.  Although much of the allegedly fraudulent conduct by Defendants occurred in Texas—preparing and submitting the false prescriptions—"the fraud was aimed at Plaintiff's business in Oklahoma with knowledge that

_____

[4] In Dudnikov, the Tenth Circuit did not decide whether the intentional conduct by the defendants must also be "wrongful."  Id. at 1073.  However, as in Dudnikov, "we are able to avoid entering this thicket," as Plaintiff's fraud-based allegations clearly allege "wrongful" conduct.  Id.

9

Plaintiff's injury—[payment for fraudulent claim reversals]—would be suffered in its home state." Id. Thus, the Court finds Plaintiff has made a sufficient showing to establish personal jurisdiction over all Defendants[5] for Plaintiff's tort action in this forum.

2.  Reasonableness

The second aspect of the due process analysis requires the Court to determine "whether the exercise of personal jurisdiction would 'offend traditional notions of fair play and substantial justice,'" regardless of the Defendants' contacts with the forum. Dudnikov, 514 F.3d at 1080 (quoting Int'l Shoe, 326 U.S. at 316).  To prevail, Defendants "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  Pro Axess, 428 F.3d at 1280 (quoting Burger King, 471 U.S. at 477).  Five factors govern the reasonableness of the Court's exercise of personal jurisdiction:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Id. at 1279-80.

The Court finds the Defendants have not made the requisite showing in this case. Although Defendants cite the relevant factors in their briefs, they do not discuss how those

---

[5] Defendants Tami, Palacios, and Muro repeat their respective arguments for avoiding liability, even if the Court finds Q Pharmacy had sufficient contacts with the forum state. However, the Court rejects this rationale for the same reasons explained supra, when discussing its grounds for exercising personal jurisdiction over all the Defendants for Plaintiff's contract-based action.

factors demonstrate the unreasonableness of litigating Plaintiff's claim in Oklahoma.  (Def. Muro's Mot., Dkt. No. 31, at 15; Def. Palacios's Mot., Dkt. No. 33, at 11, 13; Def. Q Pharmacy's Mot. at 14-15; Def. Tami's Mot., Dkt. No. 36 at 15-17.)  Furthermore, the Court finds that overall the factors weigh in Plaintiff's favor.  First, the burden on Defendants will be minimal, as they are located in a bordering state and "the majority of the work required in order to mount an effective defense can, with the use of modern technology, be accomplished from Defendants' [Texas] offices."  A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC, Case No. CIV-10-422-C, 2010 WL 3081519, at *2 (W.D. Okla. Aug. 6, 2010).  Next, Oklahoma has "'an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors.'"  AST Sports Sci., 514 F.3d at 1062 (internal citation omitted).  In contrast, the third factor weighs in Defendants' favor because the Court sees no reason Plaintiff could not effectively pursue its claim in Texas.  The fourth factor, analyzing whether Oklahoma is the most efficient forum in which to litigate the present dispute, is neutral:  witnesses are located in both Oklahoma and Texas and although the wrong underlying the suit occurred in Oklahoma, the law of both Texas and Oklahoma applies.  The fifth factor is inapplicable, as the Court finds nothing to suggest that exercising jurisdiction will affect the substantive interests of Texas or any other state.  Thus, two factors weigh in Plaintiff's favor, one in Defendants', one is neutral, and one inapplicable.  On balance, the exercise of personal jurisdiction over the Defendants is reasonable.

## III.  FAILURE TO STATE A CLAIM

### A.  Legal Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted is only appropriate "'when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.'"  Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003) (quoting McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002)).  In other words, Plaintiff's Complaint must contain "enough facts to state a claim to relief that is plausible on its face" or "enough to raise a right to relief above the speculative level."  Bell Atl. v. Twombly, 550 U.S. 544, 555, 570 (2007).  Although Twombly requires only notice pleading, Fed. R. Civ. P. 9(b) imposes a heightened pleading standard for claims of fraud.  To comply with Rule 9(b), Plaintiff's Complaint "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), or "identify the time, place, content, and consequences of the fraudulent conduct."  U.S. ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1171 (10th Cir. 2010).  At the dismissal stage, the Court will accept all of Plaintiff's well-pleaded factual allegations as true and view them in the light most favorable to Plaintiff.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

### B.  Choice of Law

The parties disagree over whether Oklahoma or Texas law applies to this case. Plaintiff asserts that Oklahoma law governs both its contract and tort actions.  In contrast, Defendants argue that Texas law applies.  Because this is a diversity action, the Court "must

apply the choice of law rules of the state where it sits, which in this instance is Oklahoma."

Black v. Cabot Petroleum Corp., 877 F.2d 822, 823 (10th Cir. 1989).

1.  Tort-based Actions

For tort-based actions, Oklahoma uses the "the most significant relationship" test, adopted from the Restatement (Second) of Conflict of Laws § 145 (1971).  See Hightower v. Kan. City S. Ry. Co., 2003 OK 45, ¶ 10, 70 P.3d 835, 842.  This test requires the Court to consider four factors "'according to their relative importance with respect to a particular issue' as follows:  '(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred.'"  Id. ¶ 11, 70 P.3d at 842 (quoting Brickner v. Gooden, 1974 OK 91, 525 P.2d 632, 637.

Applying this test, the Court concludes that Oklahoma has the most significant relationship to the parties and the events giving rise to Plaintiff's suit, and thus Oklahoma law applies.  First, the injury to PPOk occurred in Oklahoma, where PPOk operates its business.  Next, although the Defendants submitted the allegedly fraudulent claim reversals in Texas, they did so using information obtained from the Plaintiff in Oklahoma.  The third factor is neutral, as the Plaintiff's domicile is in Oklahoma and the Defendants' in Texas.  Finally, the parties' relationship began in Oklahoma, where the Defendants solicited Plaintiff PPOk and sought to join PPOk's network.

2.  Contract-based Actions

Oklahoma's choice of law rule for contract-based actions is "known as <u>lex loci contractus</u>," meaning "that, unless the contract terms provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made." <u>Harvell v. Goodyear Tire & Rubber Co.</u>, 2006 OK 24, ¶ 14, 164 P.3d 1028, 1033-34.  The facts alleged in Plaintiff's Complaint indicate that the contracts Plaintiff entered into with Defendant Q Pharmacy were made in Oklahoma.  Not only did the Defendants approach PPOk in Oklahoma, but the final execution of the contracts occurred in Oklahoma:  after the Defendants executed the contracts in Texas, they either mailed or faxed them to PPOk's location in Oklahoma City, Oklahoma, where PPOk then executed the contracts.  Thus, Oklahoma law governs Plaintiff's contract-based claims.

C.  Application

1.  Fraud

Defendants argue that the Court must dismiss Plaintiff's cause of action for fraud because PPOk's Complaint does not satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Based on the arguments made in their motions, the Defendants apparently believe that Plaintiff must prove the merits of its fraud claim in its Complaint in order to plead it with particularity.  However, this is contrary to settled Tenth Circuit law which only requires a plaintiff to "'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based," by alleging the "'who, what, when, where, and how of the alleged [claim].'"  <u>Lemmon</u>, 614 F.3d at 1171-72 (internal citations omitted).  As in

14

<u>Lemmon</u>, Plaintiff has satisfied this standard by alleging the time, place, content, and consequences of the Defendants' fraudulent conduct.  Plaintiff alleged that the named Defendants—who—fraudulently submitted claims and then reversed them, with the intention of wrongfully obtaining funds from PPOk—what and how—in September and October of 2012—when.  The Complaint provides the Defendants with fair notice of Plaintiff's fraud claims.  Thus, dismissal on the basis of Rule 9(b) is inappropriate.

2.  Breach of Contract

  With respect to Plaintiff's breach of contract claims, Defendants make two arguments: (1) that breach of the implied covenant of good faith and fair dealing is not a recognized cause of action under these circumstances and (2) Plaintiff's contract claims must be dismissed because they involve allegations of fraud and Plaintiff has not satisfied Rule 9(b).  Oklahoma imposes "'an implied duty of good faith and fair dealing'" on every contract.  <u>Worldlogics Corp. v. Chatham Reinsurance Corp.</u>, 2005 OK CIV APP 16, ¶ 9, 108 P.3d 5, 7 (quoting <u>Wathor v. Mut. Assurance Adm'rs, Inc.</u>, 2004 OK 2, ¶ 5, 87 P.3d 559, 561).  However, "a breach of the duty of good faith and fair dealing [usually] results only in damages for breach of contract, not liability for the tort of bad faith." <u>Id.</u> ¶ 10, 108 P.3d at 7.  Because Plaintiff has not alleged some sort of special relationship justifying bad faith tort liability, <u>see</u> <u>Embry v. Innovative Aftermarket Sys. L.P.</u>, 2010 OK 82, ¶¶ 6-7, 247 P.3d 1158, 1160, Plaintiff's claim is merely that for breach of contract.  However, contrary to the Defendants' contentions, dismissal of Plaintiff's cause of action for breach of contract is not appropriate, as not only has Plaintiff alleged enough facts to support a claim under the

15

<u>Twombly</u> standard, Plaintiff's claims also survive the heightened standard mandated by Fed. R. Civ. P. 9(b), as discussed <u>supra</u>.

<u>3.  Unjust Enrichment</u>

Finally, the Defendants argue that unjust enrichment is not a cause of action, but merely an equitable remedy, inapplicable upon a showing that an express contract exists. However, the Oklahoma Supreme Court has held that even where an express contract exists, equity can require rescission and restitution paid to prevent unjust enrichment.  <u>French Energy, Inc. v. Alexander</u>, 1991 OK 106, ¶ 14, 818 P.2d 1234, 1238; <u>see also</u> <u>Lapkin v. Garland Bloodworth, Inc.</u>, 2001 OK CIV APP 29, ¶ 13, 23 P.3d 958, 964.  Thus, the parties' agreements in this case do not require automatic dismissal of Plaintiff's unjust enrichment claim.

### IV. CONCLUSION

Accordingly, the Defendants' Motions to Dismiss (Dkt. Nos. 31, 33, 34, & 36) are hereby DENIED and Defendants' Motion for Order to Stay Discovery (Dkt. No. 43) is thus MOOT.

IT IS SO ORDERED this 18th day of April, 2013.

ROBIN J. CAUTHRON
United States District Judge